IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BEVERLY J. MONTUE                                                                PLAINTIFF

       v.                    Civil No. 4:13-cv-04057

CAROLYN W. COLVIN, Acting Commissioner of
Social Security Administration
                                                                                                        DEFENDANT

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Beverly J. Montue ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Plaintiff requested the case be reassigned to a District Judge. ECF No. 7.[1] Pursuant to this request, the Court issues this report and recommendation.

**I.     Procedural Background:**

Plaintiff protectively filed an application for DIB on July 1, 2009 and also filed an application for SSI on July 13, 2009. (Tr. 15, 103-113). Plaintiff alleged she was disabled due to chronic pain, a ruptured disc in her neck and lower back, she cannot sit or stand but for a short period of time, and she has leg and arm numbness. (Tr. 136). Plaintiff alleged an onset date of June 23, 2009. (Tr. 110). These application were denied initially and again upon reconsideration. (Tr. 83-86). Thereafter, Plaintiff requested an administrative hearing on her applications and this hearing request

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr."

was granted. (Tr. 91-92).

Plaintiff's administrative hearing was held on November 9, 2010. (Tr. 55-82). Plaintiff was present and was represented by a non-attorney representative, Stanley W. Brummel, at this hearing. *Id.* At the time of this hearing, Plaintiff was forty-nine (49) years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(d), 416.963(d), and the highest grade level she completed was the eleventh grade (Tr. 70, 103).

On June 23, 2011, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 12-26). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2013. (Tr. 17, Finding 1). The ALJ also determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since June 23, 2009. (Tr. 17, Finding 2).

The ALJ determined Plaintiff had the severe impairments of post cervical anterior discectomy, obesity, and disorders of the back. (Tr. 17, Finding 3). The ALJ then determined Plaintiff's impairments did not meet or medically equal the requirements of any of the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 17-18, Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 18). First, the ALJ indicated he evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform light work except, she can sit, stand, and/or walk for about six hours in an eight-hour workday; she is not limited in pushing and/or pulling with her upper and lower extremities; she can occasionally climb, kneel, balance, stoop, crouch, and crawl; she is limited to no more than occasional overhead reaching; and she has no visual, communicative, or environmental limitations.

(Tr. 15, Finding 5).

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 25, Finding 6). The ALJ found Plaintiff was able to perform her PRW as a grader of dressed poultry. *Id.* The ALJ based his determination upon the testimony of the VE. (Tr. 25). Specifically, the VE testified that the Plaintiff had past relevant work as a poultry dresser, which is heavy, unskilled, with DOT# 525.687.082; and as a grader of dressed poultry, which is light, semi-skilled, with DOT# 529.687.102. *Id*. Based upon this finding, the ALJ determined Plaintiff had not been under a disability as defined by the Act since June 23, 2009. (Tr. 26, Finding 7).

Thereafter, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision. (Tr. 11). *See* 20 C.F.R. §§ 404.968, 416.1468. The Appeals Council declined to review this unfavorable decision. (Tr. 4-6). On May 28, 2013, Plaintiff filed the present appeal. ECF No. 1. Both Parties have filed appeal briefs. ECF Nos. 10-12. This case is now ready for report and recommendation.

**II. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See*

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can

perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

### III. Discussion:

In her appeal brief, Plaintiff claims the ALJ's disability determination is not supported by substantial evidence in the record. ECF No. 10, Pg. 1-21. Specifically, Plaintiff claims the ALJ erred: (1) in failing to properly develop the record, (2) in failing to assess her residual functional capacity in accordance with the Agency's own regulations and rulings, and (3) in failing to weigh the medical opinion evidence in accordance with the law and regulations. *Id.* In response, the Defendant argues the ALJ did not err in any of his findings. ECF No. 11. Because this Court finds the ALJ erred in the failure to properly weigh the medical opinion evidence, this Court will only address this issue.

In weighing medical opinions, the Regulations require that every medical opinion received be evaluated regardless of its source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). According to 20 C.F.R. § 404.1527(c)(2), if the medical opinions in the record are inconsistent with each other, the ALJ must weigh all the evidence. *See* 20 C.F.R. § 404.1527(d). However, if medical opinions are consistent, the ALJ need not weigh them. 20 C.F.R. § 404.1527(c)(1). *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008). After reviewing the record, it is clear there are several medical opinions, some of which are inconsistent, and therefore it is necessary to assign weight. (Tr. 234-619). The ALJ stated in the decision he "also considered, evaluated, and analyzed all the opinion evidence, regardless of its source...in accordance with the requirements of 20 C.F.R. 404.1527 and Social Security Ruling 96-2p, 96-5p, and 96-6p." (Tr. 23-24). In the present action, however, the ALJ did

not comply with the requirements of the Regulations.

**A. Treating Physician**

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001).

Notably, in his opinion, the ALJ stated the opinions and conclusions submitted by Dr. Rush, the Plaintiff's treating physician, in his reports and/or conclusory forms, regarding the nature and severity of the Plaintiff's impairments, cannot be given controlling weight. (Tr. 24). The ALJ enumerates five reasons for the weight determination in addition to those previously cited when discussing his medical submissions. *Id.* Although various reasons are listed, the Court finds they are not supported by the evidence in the record.

Dr. Rush treated the Plaintiff during numerous office visits beginning in 2008. (Tr. 234-619). The ALJ acknowledged that it was Dr. Rush that referred the Plaintiff to a neurosurgeon, Dr. Contreras, after her continuing complaints of neck pain. (Tr. 18). Ultimately, a two-level anterior cervical discectomy and fusion ("ACDF") were required. (Tr. 267). Dr. Rush also treated her

hypertension that was malignant at times and her peripheral neuropathy with bilateral leg numbness. (Tr. 478, 481, 483, 485, 491). The Plaintiff's condition concerned Dr. Rush enough for him to order several electrodiagnostic reports. (Tr. 471, 494, 503, 596). The ALJ wrote in the decision that one of the reports suggest the Plaintiff has hyper upper lumbar and saphenous nerves. (Tr. 21). Dr. Rush also ordered an MRI study of her lumbar spine that revealed multilevel degenerative changes, the most severe at L4-L5, and hemangioma in the S2 vertebral body (Tr. 466). The evidence shows Dr. Rush was highly involved in the care of her impairments and even recommended further objective testing and specialized treatment.

Further, Dr. Rush submitted several medical opinions via return to work certifications for her employer and insurance forms. The ALJ wrote in a December 2009 opinion, Dr. Rush expected her to be able to return to work in April 2010, and at approximately the same time, he completed a statement for the insurance company indicating she would be unable to return to work for three to six months. (Tr. 19). The ALJ stated based on what Dr. Rush reported, the Plaintiff was only expected to be unable to work until April 2010. *Id.*

After reviewing the medical opinion, the Court finds the April 2010 date was not meant to be definitive by Dr. Rush because he explicitly wrote it was an "expected target date." (Tr. 470). In the decision, the ALJ even acknowledged that Dr. Rush found she could not sit or stand for long periods, and she could not lift or make any repetitive movements. (Tr. 19). Dr. Rush also indicated the Plaintiff would be incapacitated for a single continuous period, and after recovery, her condition would cause flare-ups, which could periodically prevent her from performing her job functions. *Id.*

The ALJ's reasons for not giving Dr. Rush controlling weight are insufficient. The ALJ found Dr. Rush's opinions and conclusions do not meet the requirements of SSR 96-2p and they are

inconsistent with the preponderance of the objective medical and other evidence of record. (Tr. 24). The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). The Court does not find Dr. Rush's medical opinions to be inconsistent with the remainder of the record. For instance, the Plaintiff went to see Dr. Cavanaugh for a second opinion, and he also recommended an MRI study of her lumbar spine. (Tr. 542). The results were similar to the MRI study ordered by Dr. Rush, showing disc degeneration and broad subligamentous protrusion at the L4-5 level. (Tr. 466, 539). Dr. Cavanaugh was concerned enough to refer her to a rheumatologist for possible arthritic problems. (Tr. 553-554). This evidence shows that another physician found she needed further objective testing and specialized treatment due to the severity of her impairments.

The Court finds the second reason the ALJ cited, namely, Dr. Rush has not placed or recommended hospitalization or placement in a sheltered or highly supported living environment, does not make much sense in light of the nature of her severe impairments. (Tr. 24). After reviewing the evidence in its entirety, the Court also disagrees with the ALJ's third reason stating that Dr. Rush's opinions and conclusions are inconsistent with his own findings or opinions in other parts of his reports. (Tr. 24). Over the years, the opinions provided by Dr. Rush gradually and consistently extended the length of time the Plaintiff was unable to return to work with each reassessment of her condition. (Tr. 470, 472-473, 486-489, 562, 564-566, 583). The ALJ's fourth reason, that Dr. Rush's entries do not state the objective or sufficiently explanatory bases or factors that support his opinions and conclusions, is likewise without merit. (Tr. 24). In each opinion, Dr.

8

Rush cites to the medical conditions that support his opinions. (Tr. 470, 472-473, 486-489, 562, 564-566, 583). Dr. Rush also specifically references objective testing in some of his assessments. (Tr. 472, 564). For example, in January 2010, Dr. Rush referenced clinical findings for support such as an MRI study of lumbar spine that revealed broad-based bulges and severe nerve injury. (T. 564).

In his decision, the ALJ's fifth reason for not giving Dr. Rush controlling weight is because his opinions and conclusions are on issues reserved to the Commissioner. (Tr. 24). The Court finds that the majority of Dr. Rush's opinions do not impinge on issues reserved for the Commissioner. (Tr. 470, 472-473, 486-489, 562, 564-566). The only opinion which might be perceived in this light was made in August 2010 when Dr. Rush wrote that permanent disability is possible. (Tr. 583). Nevertheless, it is unclear as to what type of disability Dr. Rush was referring to since it was made in a return to work certification form for the Plaintiff's employer. The Court finds the weight the ALJ gave to Dr. Rush's opinions and the explanations provided lack sufficient support in the record.

**B. Other Medical Opinions**

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight . . . [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 404.1527(d). In the present action, the ALJ ignored these regulations and instead focused upon the opinions of non-examining, reviewing physicians stating that "the State Agency's expert medical doctors and other expert consultants evaluated the [Plaintiff's] physical impairments based on all of the evidence of record having been received from all medical sources, treating and

consultative." (Tr. 21). The ALJ's statement is untrue because the Physical Residual Functional Capacity Assessment made by Dr. Takach was provided on September 30, 2009, and Dr. Payne's affirming review was made on December 21, 2009. (Tr. 454-456, 474). The Court finds there is a substantial amount of subsequent medical evidence the State Agency physicians did not take into consideration when formulating their opinions. Despite this fact, the ALJ gave "greater weight to the opinion of the State Agency's expert medical and other expert personnel" over the Plaintiff's treating sources along with the evaluations of consultative physicians. (Tr. 25).

For example, Dr. Ward, after personally examining the Plaintiff and obtaining objective evidence, assessed during the Physical Consultative Examination the Plaintiff would be limited with her walking, standing, sitting, and lifting. (T. 451). The ALJ's decision to rely upon the opinions of non-examining, non-treating physicians was in error. The Court finds that this is especially true because these opinions are not consistent with the findings of the Plaintiff's treating physician, Dr. Rush. *See Harvy v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) (holding "[i]t is true that we do not consider the opinions of non-examining, consulting physicians standing alone to be 'substantial evidence'"). Accordingly, this case should be reversed and remanded, and a proper and complete analysis of the medical opinions should be performed pursuant to the requirements found in the regulations and law.

**V. Conclusion**:

Based on the foregoing, the Court recommends reversing and remanding the decision of the ALJ because it is not supported by substantial evidence. **The parties have <u>fourteen</u> days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to**

**appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

  **ENTERED** this **10th day of July 2014.**

              /s/ Barry A. Bryant
             HONORABLE BARRY A. BRYANT
             U.S. MAGISTRATE JUDGE